IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:23-cr-183 |
| | ) | |
| v. | ) | Sentencing Date: March 29, 2024 |
| | ) | |
| WENDINBOUDE OUEDRAOGO, | ) | The Honorable Claude M. Hilton |
| | ) | |
| *Defendant*. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or "USSG"), files this Position of the United States with Respect to Sentencing of Ouedraogo. The United States reviewed the Presentence Investigation Report ("PSR") and the computations of the United States Probation Officer ("USPO"). The USPO calculated a total combined offense level of **26** for the defendant, resulting in an advisory guidelines range of **70-87 months** (Ouedraogo is in criminal history category II). The United States agrees with the USPO's guideline calculations. For the reasons set forth below, and in the government's sealed filing the United States respectfully submits that a term of imprisonment below the applicable guideline range would be reasonable and appropriate under 18 U.S.C. § 3553(a). The United States respectfully requests that the defendant be sentenced to a term of imprisonment for 56 months.

**I.    BACKGROUND**

   **A. The Pandemic**

The pandemic was a time characterized not only by a serious disease but also by true economic uncertainty. The fear felt at the time is hard to remember now – there were concerns about the country falling into an economic depression during the first few months of the pandemic.

Millions of Americans lost their jobs seemingly overnight. 23.1 million Americans were unemployed in April 2020.[1] The U.S. real gross domestic product (GDP) "fell by 8.9 percent in the second quarter of 2020 … the largest single-quarter contraction in more than 70 years." [2]

In response to the looming financial peril threatening the country, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, more commonly known as the "CARES ACT." Pub. L. No. 116-136, 134 Stat. 281 (2020) in March of 2020. The CARES Act generously made billions of government-guaranteed loans available to qualified small businesses through the Paycheck Protection Program ("PPP"). These loans would be forgiven entirely if the loan proceeds were used on a narrow list of expenses designed to help struggling businesses survive such as payroll, utilities, rent, and employee health care expenses. PSR ¶ 16. To qualify for a PPP loan, an applicant had to meet certain criteria designed to ensure that the program's assets would be used to forestall widespread layoffs and economic collapse.

**B. Offense Conduct**

From at least June 2020 through at least June 2021, Ouedraogo and his coconspirators, on behalf of various businesses, submitted applications to financial institutions for PPP loans to which the businesses were not entitled. The coconspirators also created fake tax documents and bank statements to support for the fraudulent loan applications. PSR ¶ 25. The coconspirators charged

---

[1] "TED: Economics Daily," U.S. Bureau of Labor Statistics, available at https://www.bls.gov/opub/ted/2020/unemployment-rate-rises-to-record-high-14-point-7-percent-in-april-2020.htm (last visited September 1 2023)

[2] "The U.S. Economy and the Global Pandemic, Chapter 3," the White House (April 26, 2022, 4:00 p.m.) available at whitehouse.gov/wp-content/uploads/2022/04/Chapter-3-new.pdf (last visited September 1, 2023)

the applicant businesses fees for each fraudulent PPP loan they obtained. Ouedraogo and his coconspirators knowingly prepared at least 16 fraudulent PPP loan applications. Importantly, the loss amount in this case which is $9,364,894 is based on the 16 fraudulent loans that were funded and represent the actual loss the conspiracy caused the SBA.

Ultimately, this fraud scheme was extremely profitable for Ouedraogo and his coconspirators. The United States anticipates filing a consent order of forfeiture which calls for a $384,700 money judgment from the defendant, a figure which represents the defendant's personal profit from the conspiracy.

## II.     GUIDELINES CALCULATION

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, it held that a sentencing court must "consult [the] Guidelines and take them into account when sentencing." 543 U.S. 200, 264 (2005); *see also United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotations omitted); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005).

A sentencing court should first calculate the defendant's guideline range after making the appropriate findings of fact. *See United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Following that calculation, a sentencing court must then "consider that range as well as other

relevant factors set forth in the [G]uidelines and those factors set forth in [18 U.S.C. §] 3553(a) before imposing the sentence." *Id.*

*The Advisory Guideline Range*

The base offense level, 18-level loss enhancement and a two-level enhancement for deriving more than $1,000,000 from a financial institution are not in contention. The parties agreed to these Guidelines enhancements through the written plea agreement and the USPO included these enhancements within her Guideline calculation for the PSR. *See* PSR ¶ 3, 41-42, 44.

The USPO also correctly included a 2-level enhancement for sophisticated means pursuant to USSG § 2B1.1(b)(10)(C) to the defendant's total offense level. PSR ¶ 43. Application Note 9 of USSG 2B1.1 explains that "conduct such as hiding assets or transactions, or both, through the use of fictious entities, corporate shells. . . ordinarily indicates sophisticated means." As Ouedraogo's Statement of Facts details, the business applicants often transferred the fees they owed to the conspirators through accounts held by shell companies. PSR ¶¶ 19, 26, 27, 28-29. Although Ouedraogo reserved the right within his plea agreement to argue that this enhancement should not apply to his total offense level, he has not yet objected to the application of the sophisticated means enhancement. PSR at p.24. The government agrees with the USPO's application of the sophisticated means enhancement to the defendant's total offense level.

For the reasons stated above, the defendant's correct total offense level is 26 and his correct sentencing range under the Guidelines is 70 to 87 months.

### III. THE FACTORS SET FORTH IN SECTION 3553(A) AND RECOMMENDED SENTENCE

After calculating the appropriate Guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence

4

[within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). Pursuant to 18 U.S.C. § 3553(a), the Court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, among other things, reflect the seriousness of the offense and adequately deter criminal conduct; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61. The advisory guidelines range is an important starting point because it captures the seriousness of the offense. *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007) ("[T]he Guidelines reflect a carefully considered assessment of the seriousness of federal crimes").

A. **The Nature, Circumstances, and Seriousness of the Offense**

During a time of unprecedented uncertainty when millions of Americans were struggling, Ouedraogo and his coconspirators worked to defraud a pandemic relief program. The defendant committed a serious crime and helped cause over $9 million in losses to the PPP. Standing alone, the $9 million fraud loss and the defendant's unlawful $384,700 gain from the fraud are significant. In 2023, the average American earned approximately $59,428 and the average Virginian earned $65,590.[3] Thus, the Court should sentence the defendant to a meaningful term of incarceration to

---

[3] "Average Salary by State (in 2023)," by Belle Wong, Forbes Advisor, available at https://www.forbes.com/advisor/business/average-salary-by-state/#sources_section (last visited August 18, 2023) (citing statistics from the U.S. Bureau of Labor Statistics)

show that these financial crimes do not pay.

However, the harm in this case cannot be measured solely by the financial losses suffered by the victim. Rather, the defendant's criminal conduct imposed several other harms on secondary victims, including:

a. By unjustly obtaining the proceeds of 16 PPP loans, the defendant stole opportunities from at least 16 small businesses to obtain financial assistance in order to retain their workforce;

b. By pilfering PPP funds, the defendant's criminal conduct also harmed American workers whose paychecks the program intended to subsidize;

c. By submitting 16 fraudulent PPP applications to financial institutions, including Bank A, the defendant raised administrative costs for these financial institutions, likely to delaying the approval of legitimate applications of businesses and other entities that desperately needed a loan to keep their workers employed;

d. Finally, while the SBA is the ostensible victim in this case, the defendant also defrauded the American taxpayers whose earnings underlie the government program in question.

In conclusion, the circumstances surrounding Ouedraogo's criminal conduct are particularly troubling as he used a national tragedy to enrich himself through fraud. The Court should give great weight to this factor in imposing a carceral sentence. *See Gall*, 522 U.S. at 59 (holding it was "quite reasonabl[e]" for the sentencing for the sentencing court to have "attached great weight" to a 3553(a) factor.); *see also Kimbrough v. United States*, 552 U.S. 85, 111 (2007) (holding that appellate court should not find the sentencing court's reliance on a single factor unreasonable, so long as the court imposes a sentence sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553(a)(2)") (internal quotation marks omitted); *see also United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007) (permitting a district court to "reasonably accord significant weight to a single sentencing factor in fashioning its sentence.") A

sentence of 56 months would account for the seriousness of the defendant's crimes, provide just punishment and would promote respect for the law.

**B. The Defendant's History and Characteristics and the Need for Specific Deterrence**

The government realizes that there are several mitigating circumstances surrounding the defendant, including some of his personal circumstances and those disclosed within the sealed filing. The Court must balance these mitigating circumstances against Ouedraogo's own choices and actions within the conspiracy. However, the defendant's history and characteristics support some meaningful sentence of incarceration, although one below his guideline range. For reasons further explained below, Ouedraogo's criminal history, the length of time in which he participated in the conspiracy coupled with the amount of money that he illegally gained suggest that only a significant custodial sentence will serve as a just punishment.

The Court should impose the recommended sentence to deter Ouedraogo from further criminal activity. Ouedraogo has engaged in criminal conduct and a variety of fraud schemes for the past eight years. *See* PSR ¶ 54-56. In 2016, Ouedraogo and another individual fraudulently purchased a 2013 Dodge Challenger and attempted to purchase a Mercedes using a victim's personally identifying information. PSR ¶ 54. Roughly a year later, the defendant was arrested for fraudulent conduct that used altered and re-embossed debit cards that appeared to be taken from guests at a pool club. PSR ¶ 55. Finally, in 2023, the defendant was arrested for a separate mail fraud scheme in the United States District Court for the District of Minnesota. PSR ¶ 56. For this case, the defendant was involved in a conspiracy to obtain stolen insurance checks and then deposit these checks into various bank accounts opened with fraudulent passports or driver's licenses which lasted from approximately August 2022 to March 2023. *Id.* On or about February 13, 2024,

7

the defendant pleaded guilty to the mail fraud conspiracy charge. *Id.*

The criminal history demonstrates a pattern of conduct, as well as an escalation in the length and seriousness of Ouedraogo's fraud schemes. A meaningful sentence here would deter Ouedraogo from additional criminal conduct and protect the public from future fraud schemes.

**Need to Deter Future Criminal Conduct and Promote Respect for the Law**

The defendant exploited governmental efforts to aid those in need, for his own financial gain. His actions are serious, and their impact extends beyond this case. Each time federal benefits are obtained through fraud it misappropriates taxpayer dollars and shakes public confidence in government. Ouedraogo's conduct demonstrates a disregard for the law and a failure to appreciate the purpose of pandemic relief loans.

Thus, a significant, but not excessive sentence, is needed to deter the defendant and others, from engaging in similar conduct. Absent a meaningful term of imprisonment, general deterrence – "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequences of imprisonment is likely to follow" – will not be achieved. *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976). Due to the prevalence of government program fraud, the United States often lacks the resources to investigate and prosecute all bad actors. Accordingly, general deterrence is critically important to dissuading others from engaging in similar conduct. *See United States v. Morgan*, 635 F. App'x. 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionally minimized.").

Congress recognized that general deterrence is particularly important in the context of white-collar crime and "emphasized the critical deterrent value of imprisoning serious white collar criminals, even when the criminals might be unlikely to commit another offense." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018); *see also United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) (cleaned up) ("[I]n enacting § 3553, Congress was especially concerned that prior to the Sentencing Guidelines, major white collar criminal often were sentence to small fines and little or no imprisonment.")

Pandemic relief loan frauds are deliberate and calculated crimes of choice. They are therefore more susceptible to general deterrence and more in need of a significant sentence to achieve that deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (finding that crimes that are "rational, cool, and calculated" rather than "crimes of passion or opportunity" are "prime candidates for general deterrence") (citation omitted). Moreover, crimes like this are lucrative and can be difficult to detect. *See*, *e.g.*, *United States v. Hefferman*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offense that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.")

A sentence of incarceration of 56 months is, therefore, necessary to send the appropriate message to the defendant—and more importantly, to others—that those who engage in this conduct will be held accountable. And this type of fraud appears to have been rampant: as much as $136 Billion in PPP funds and $64 Billion in EIDL funds were stolen by people like Ouedraogo and his

coconspirators.[4] This Court should impose a sentence to deter the defendant and others from repeating similar crimes.

### C. Avoid Unwarranted Sentencing Disparities

A sentence that bears some relationship to the guidelines, adjusted downward for reasons stated in the government's sealed filing, is best calculated to avoid unwarranted sentencing disparities. As the Seventh Circuit has noted, "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (noting light sentence for cooperating defendant was appropriate and lengthy sentence for defendant who did not was appropriate, and was not a disparity, but a justifiable difference).

### D. The Recommended Sentence Should Run Consecutive to Ouedraogo's Term of Imprisonment Imposed by the District Court for the District of Minnesota

The Court should not run Ouedraogo's sentence concurrent to his sentence in the District of Minnesota case. Section 5G1.3(d) of the Guidelines allows courts to impose a sentence that runs partially or fully concurrent to an undischarged term of imprisonment. To determine whether a concurrent sentence would achieve a "reasonable punishment for the instant offense," courts should consider: (i) the 3553(a) factors; (ii) the type and length of the undischarged sentence; (iii) the time served on the undischarged sentence and the time likely to be served before release; (iv) whether the undischarged sentence was imposed by state court or federal court; and (v) any other relevant circumstance. U.S.S.G. § 5G1.3(d) n.4(A).

---

[4] "Government Watchdog Estimates U.S. Lost $200 billion to COVID Fraud," by Erin Doherty, Axios, available at https://www.axios.com/2023/06/27/covid-relief-fraud-inspector-general-sba (last visited August 17, 2023) (quoting the Small Business Administration's Office of Inspector General's report.)

The Court should order this sentence to run consecutive to Ouedraogo sentence from the District of Minnesota for two reasons. First, weight of the factors referenced in the application note favor a consecutive sentence. Although Ouedraogo's potential sentence from the District of Minnesota is currently unknown, the 3553(a) factors and other relevant circumstances surrounding both fraud schemes suggest that consecutive sentences are necessary. Second, the victim and fraudulent conduct in this case are completely unrelated to the victims and conduct at issue in the District of Minnesota case. There, the victims were insurance companies and banks that were defrauded through a counterfeit check scheme. Here, the victim is the SBA that was defrauded through fraudulent PPP loans. A consecutive sentence would help vindicate the harm to the victim of this case as well as the American taxpayers.

## CONCLUSION

Based on the 18 U.S.C. § 3553(a) factors, a sentence of incarceration below the applicable guideline range followed by a term of supervised release as well as the entry of restitution and forfeiture orders are necessary and entirely appropriate in this case. A below guideline sentence of 56 months imprisonment would still account for the defendant's wrongdoing. Such a sentence is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Jessica D. Aber
United States Attorney

/s/
Kathleen E. Robeson
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to all counsel of record.

A copy has also been sent via email to:

Rachael Meyer
United States Probation Officer
Rachael_Meyer@vaep.uscourts.gov

                                                By:      /s/
                                                        Kathleen E. Robeson
                                                        Assistant United States Attorney
                                                        United States Attorney's Office
                                                        Justin W. Williams U.S. Attorney's Building
                                                        2100 Jamieson Avenue
                                                        Alexandria, VA 22314
                                                        Telephone: 703-299-3700
                                                        Email: kathleen.robeson@usdoj.gov